# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-00059-SCT

*JAMES ARTHUR HIRES*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/7/2001 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RONALD REID WELCH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED IN PART AND APPEAL DISMISSED IN PART - 06/17/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In 1978 James Arthur Hires was convicted of kidnaping and sentenced to life, but escaped prior to a hearing to determine his habitual offender status. Upon his capture in 1985, Hires was sentenced to life without possibility of parole as a habitual offender. Hires pled guilty to escape and was sentenced to an enhanced 5 years to run concurrently with the life sentence. The circuit court granted Hires' motion to appeal in forma pauperis, and then

vacated that order upon motion of the State. Hires filed a petition for writ of certiorari with this Court attempting to appeal the circuit court's order vacating permission allowing him to appeal IFP. We denied Hires' petition. In 1990, Hires filed a petition for leave to proceed on an out-of-time appeal IFP, which was dismissed as procedurally barred. In 2000, Hires filed a motion for post-conviction relief which was denied by the circuit court as procedurally barred. His appeal was assigned to the Court of Appeals, which affirmed. *See Hires v. State*, 856 So. 2d 438 (Miss. Ct. App. 2003). After his motion for rehearing was denied, he filed this petition for writ of certiorari, which we granted. Hires asserts that the Court of Appeals decision is in conflict with our prior decisions and the decisions of the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit. He further asserts various violations of his constitutionally protected rights.

## FACTS AND PROCEDURAL HISTORY

¶2.    In 1978, James Arthur Hires was indicted for kidnaping Debra Grinder at knife point in Gulfport and taking her to McComb. Attorney Bobby Joe Randall[1] was appointed to represent Hires. A non-bifurcated trial was held, and the jury found Hires guilty of kidnaping and sentenced him to life imprisonment. A sentencing hearing was scheduled to determine Hires' habitual offender status. However, Hires escaped prior to that hearing.

¶3.    Hires was captured in Florida in 1985, returned to Mississippi, and Bobby Joe Randall was again appointed to represent him. After a hearing on May 8, 1985, Hires was sentenced to life imprisonment without hope of parole as a habitual offender on the kidnaping

---

[1] Bobby Joe Randall died in 2000.

conviction. Also on this date, Hires pleaded guilty to escape and was sentenced to five years as a habitual offender to run concurrently with the life sentence. On May 15, 1985, the circuit court entered an order allowing Hires to appeal the kidnaping conviction in forma pauperis. However, it later granted the State's motion to set aside that order on the ground that Hires had escaped after conviction and was not entitled to appeal. At a hearing on the State's motion to set aside, the circuit court entered an order in both the kidnaping and the escape cause numbers relieving court-appointed attorney Bobby Joe Randall based on an announcement by attorney Jimmy McGuire that "he had been contacted by Defendant's girlfriend with a promise to be hired to prosecute the appeal on behalf of the Defendant," and holding in abeyance the previous order for IFP appeal. That same date, the circuit court entered a separate order vacating the previous order for IFP appeal.

¶4.     In December of 1985, attorney Kelly Walker, who was apparently an associate of Jimmy McGuire, filed a petition for writ of certiorari with this Court attempting to appeal the circuit court's order denying Hires' appeal. We denied the petition per curiam.[2] Over the next few years, Hires made various unsuccessful attempts to get the trial transcripts. In 1989, he filed a motion to reconsider the order denying appeal or in the alternative, to reinstate the appeal, which was denied by the trial court. In 1990, Hires filed in this Court a pro se Petition for Leave to Proceed on Out-of-Time Appeal in Forma Pauperis, which was dismissed as procedurally barred.[3] Also in 1990, the United States District Court granted

---

[2]***Hires v. State***, Misc. No. 2019.

[3]***Hires v. State***, 90-M-496

3

Hires' motion to compel with regard to the trial transcript and then later entered a report that the transcript had been destroyed. However, the record shows that, on March 25, 2002, a court reporter filed a statement of fees, stating that the transcript of the trial consisted of 129 pages and that it had been recompiled and bound. The circuit clerk certified the same.

## DISCUSSION

### I.  THE FUGITIVE DISMISSAL RULE.

¶5.    It is well settled that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal. *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239, 113 S. Ct. 1199, 1203, 122 L. Ed. 2d 581 (1992). *See also Derrick v. State*, 406 So. 2d 48 (Miss. 1981). This principle is called the "fugitive dismissal" or "fugitive disentitlement" rule. The rationale behind the rule is that "dismissal by an appellate court after a defendant has fled its jurisdiction serves an important deterrent function and advances an interest in efficient, dignified appellate practice." 507 U.S. at 242, 113 S. Ct. at 1204-05 (citing *Estelle v. Dorrough*, 420 U.S. 534, 537, 95 S. Ct. 1173, 1175, 43 L. Ed. 2d 377 (1975)). The rule has also been applied to post-conviction proceedings. *United States v. Bravo*, 10 F.3d 79, 83 (2d Cir. 1993).

¶6.    However, because Hires escaped prior to the habitual offender hearing and was recaptured before appeal, he "flouted the authority" of the circuit court, not this Court. *Ortega-Rodriguez*, 507 U.S. at 246, 113 S. Ct. at 1206. Therefore, the above two rationales for the fugitive dismissal rule do not apply where a defendant such as Hires escapes prior to the filing of an appeal. As the Supreme Court reasoned in *Ortega-Rodriguez*, an appropriate punishment for an escape while the case is pending before a trial court would be sentencing

4

the defendant for the crime of escape, not dismissal of a subsequent appeal. *Id.* at 247, 113 S. Ct. at 1207.

¶7.     However, where the escape is a "long escape, even if ended before sentencing and appeal," the defendant's actions "may so delay the onset of appellate proceedings that the [prosecution] would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal." *Id.* at 249, 113 S. Ct. at 1208.  Because this case involves basic rights, we look to federal courts for further guidance.  The United States Court of Appeals for the Second Circuit has held that the fugitive dismissal rule may be applied in cases where the defendant has been recaptured prior to his or her appeal and where the defendant's escape so delays the onset of appellate proceedings that the government would be prejudiced in locating witnesses if a trial were to take place after a successful appeal. *United States v. Morgan*, 254 F.3d 424, 427 (2d Cir. 2001).  Moreover, in *United States v. Bravo*, 10 F.3d 79, 84 (2d Cir. 1993), relying on *Ortega-Rodriguez*, the Second Circuit held that the fugitive dismissal rule precluded the defendant, who had been a fugitive for 15 years, from asserting on appeal any claims that could otherwise have resulted in a new trial.  The court reasoned that the defendant's 15-year absence severely undermined the government's ability to assemble witnesses and evidence for any retrial that might result from granting his motions. Finally, the United States Court of Appeals for the Fifth Circuit has held that an appellate court has authority to dismiss an appeal "at least as to trial proceedings completed before the appellant became a fugitive." *United States v. DeValle*, 894 F.2d 133, 136 (5th Cir. 1990). The court also held that an appellate court has the authority to dismiss a fugitive's appeal

5

even when the escape took place before a notice of appeal had been filed, or, for that matter, before a sentencing hearing. *Id.*

¶8.     Following these precedents, we find that Hires' escape so delayed the onset of appellate proceedings pertaining to the kidnapping conviction and sentencing that the State would be prejudiced in locating witnesses and presenting evidence at a possible retrial.

### II.     THE ESCAPE GUILTY PLEA AND ENHANCED SENTENCE AS A HABITUAL OFFENDER.

¶9.     We find that Hires' claims pertaining to the entry of the guilty plea on the charge of escape and the enhanced sentence as a habitual offender are time barred under Miss. Code Ann. § 99-39-5 (Rev. 2000), which mandates that petitions for post-conviction collateral relief must be filed within three years of the date the order of conviction is entered.  The record shows that the order on Hires' guilty plea and enhanced sentence was entered on May 8, 1985.  The PCR petition was not filed until December 20, 2000.  While it is true that Hires filed a petition for writ of certiorari with this Court in January of 1986, Hires was attempting to appeal his conviction for kidnaping, not his conviction for escape or enhanced sentence.

### CONCLUSION

¶10.    Applying the fugitive dismissal rule, we dismiss Hires' appeal insofar as it pertains to claims arising out of the kidnaping conviction and life sentence.  We affirm the denial of Hires' claims as to the escape guilty plea and enhanced sentence as a habitual offender as time barred.

¶11.    **AFFIRMED IN PART AND APPEAL DISMISSED IN PART.**

6

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**